445 So.2d 32 (1984)
Marlin W. STURM
v.
ZELDEN AND ZELDEN, Frederick A. Wild, III, National Union Fire Insurance Company.
No. CA-0984.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Santo A. Dileo, New Orleans, for plaintiff-appellant Marlin W. Sturm.
W. Paul Andersson, New Orleans, for defendants-appellees Zelden and Zelden and Nat. Union Fire Ins. Co.
Before KLEES, GARRISON and CIACCIO, JJ.
KLEES, Judge.
Marlin W. Sturm, plaintiff-appellant, appeals from a judgment of the trial court maintaining defendants' exceptions of prescription and no right or cause of action. The basis of plaintiff's lawsuit was an assertion that defendants failed to include an "as is" waiver of warranty clause in an act of sale that conveyed a piece of real property from Sturm to Mintz & Mintz Realty.

FACTS
The facts in this matter are not disputed. Plaintiff-appellant Sturm was the vendor of certain real estate, which he sold on October 15, 1979 to Mintz & Mintz Realty, by an act of sale passed in the law offices of Zelden and Zelden, defendant-appellee.
Approximately six months later, on February 29, 1980, purchaser sued Sturm for reduction of the sales price, alleging a redhibitory vice. A trial of that suit resulted in a judgment for purchaser, Mintz & Mintz Realty. An appeal was taken by *33 Sturm, and the appellate decision reversed in part, freeing Sturm of all liability. Mintz & Mintz Realty Co. v. Sturm, 419 So.2d 981 (La.App. 4th Cir.1982). The Louisiana Supreme Court denied purchaser's writ application in December of 1982.
On March 12, 1982, Sturm, while a defendant in the redhibition suit, filed this action against Zelden and Zelden, and their professional malpractice insurer, alleging that Sturm's exposure in the redhibition suit resulted solely from the notary's failure to include an "as is" clause in the 1979 act of sale, as provided in the purchase agreement. An exception of prescription was filed by defendants, as well as an exception of no right/cause of action.
The exceptions were taken under advisement by the court, and a judgment rendered on January 11, 1983 maintaining both the prescription and the no right/cause of action exceptions. Fifteen days were granted to amend the petition.
An amended petition was filed on January 26, 1983 by plaintiff, to which defendants renewed their exceptions. After argument, a judgment dismissing plaintiff's claims was rendered March 17, 1983, from which plaintiff appeals.
Plaintiff filed this devolutive appeal based primarily on two allegations: 1) that prescription did not begin to run until December 10, 1982 when the Louisiana Supreme Court refused writs on the quanti minoris suit or at the very earliest on March 13, 1981 when the trial court's judgment became executory, or alternatively that the ten year prescriptive period based on a breach of contract, should have been applied in this case instead of the one year prescriptive period for actions in tort, 2) that the failure to include the "as is" clause and plaintiff's resultant exposure did constitute a right or cause of action. We agree with the judgment of the trial court and affirm.
Actions based on legal malpractice can be either contractual or delictual (or both) in nature. Though the facts in the instant case do not preclude a contractual relationship existing between plaintiff and defendants, they do not support plaintiff's argument that a ten year prescriptive period should be invoked.
The Louisiana Supreme Court in Sciacca v. Polizzi, 403 So.2d 728 at 730 (La.1981) quoted the following passages from Judge Wisdom's opinion in Kozan v. Comstock, 270 F.2d 839 (5th Cir.1959) with approval:
"It is the nature of the duty breached that should determine whether the action is in tort or in contract. To determine the duty one must examine the patient-physician relationship. It is true that usually a consensual relationship exists and the physician agrees impliedly to treat the patient in a proper manner. Thus, a malpractice suit is inextricably bound up with the idea of breach of implied contract. However, the patient-physician relationship, and the corresponding duty that is owed, is not one that is completely dependent upon a contract theory. There are instances in which the relationship exists though there is clearly no contractual relationship between the patient and the physician. Thus, the patient may be incapable of contracting or a third person may have contracted with the physician for the treatment of the patient. Even in these instances in which no contract is present the physician still owes a duty to the patient. The duty of due care is imposed by law and is something over and above any contractual duty. Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract. This view that malpractice suits are tortious in nature probably represents the majority view.
We do not mean to say that there can never be a contractual action against a physician. Generally, a physician undertakes only to utilize his best skill and *34 judgment. When he negligently fails to do so he may have committed a tort. However, a physician may, by express contract, agree to effect a cure or warrant, that a particular result will be obtained. In such instances an action in contract may lie against a physician. However, in the absence of a special warranty or contract, a malpractice suit against a physician is an action in tort and is subject to the limitation period for tort actions."
In Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 at 998 (La.App. 1st Cir.1983), this analysis was applied to legal malpractice action:
"Conceptually, the action for legal malpractice is no different than the action for medical malpractice. Both entail a deviation from the accepted standard of care of the profession. Although the attorney-client relationship gives rise to an implied warranty of the attorney to use his best professional skill and judgment, this duty is legal rather than contractual in nature, and a breach of this duty amounts to a tort. See Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972); Corceller v. Brooks, 347 So.2d 274 (La. App. 4th Cir.1977). Only when an attorney breaches an express warranty of result does an action for breach of contract arise."
Plaintiff Sturm was not a client of Zelden & Zelden, in fact, Zelden and Zelden represented Mintz & Mintz in their quanti minoris suit against Sturm. Zelden & Zelden did act as notary for the October 15, 1979 Act of Sale; thus, the argument for the creation of an implied contract between Sturm and Zelden and Zelden can be made. Nonetheless, it stretches the point to suggest that an express warranty resulted.
Louisiana Civil Code, article 3536 provides in pertinent part:

Article 3536. Other actions prescribed by one year
The following actions are also prescribed by one year:
That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses.
Plaintiff argues that prescription should not begin to run until the trial court's judgment could become executory on March 13, 1981 and therefore his March 12, 1982 filing was timely.
Louisiana Civil Code, article 3537 reads in pertinent part:

Art. 3537. Commencement of prescription under Article 3536
The prescription mentioned in the preceding article runs:
With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.
And in the other cases from that on which the injurious words, disturbance or damage were sustained.
In Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 at 287 (1970), the Louisiana Supreme Court held that:
"... [I]t is not necessary that the party have actual knowledge of the conditions as long as there is `constructive notice'. Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription."
Further, this circuit has recently held in Henderson v. Diamond Datsun, Inc., 413 So.2d 542 at 544 (La.App. 4th Cir.1982) that:
"Prescription does not begin to run until the plaintiff has knowledge of both the tort and resultant damages; until a cause of action has manifested itself with sufficient certainty to be capable of proof in a court of law."
We conclude that plaintiff became aware of the omission of the "as is" language at least as early as January 29, 1981 *35 (the date of the trial of the quanti minoris suit) and in no case later than the date of the trial court's judgment in that matter (February 2, 1981).
The filing of the lawsuit for an action in quanti minoris and the trial court's subsequent judgment was certainly sufficient to put plaintiff on notice of the alleged tort and its resulting damages. Thus we conclude that the trial court's action in maintaining defendants' exception of prescription was correct. Having reached this conclusion we find it unnecessary to discuss plaintiff's other allegation of error.
Accordingly, for the reasons assigned the judgment of the trial court is affirmed. Costs to be paid by plaintiff-appellant.
AFFIRMED.