457 So.2d 225 (1984)
Joyce ANDERSON
v.
Wilmer HINRICHS, et al.
No. CA-1648.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 1984.
Rehearings Denied October 29, 1984.
Writs Denied December 14, 1984.
*226 James H. Looney, New Orleans, for plaintiff-appellee.
Wilmer G. Hinrichs, New Orleans, in pro. per.
Before SCHOTT, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
Joyce Anderson, appellee, filed suit on August 5, 1980 against Wilmer Hinrichs, appellant, seeking recovery for damages allegedly sustained as a result of appellant's failure to timely record an act of sale for which he served as notary, and in his delay in delivering a title insurance policy. The trial court awarded appellee $1,500.00 for legal expenses, $2,500.00 in general damages, plus interests and costs. From that judgment appellant has perfected this appeal. Appellee has answered seeking an increase in the award.
The facts of this matter are essentially undisputed. Appellee purchased a home at 4600 Deanne Street, New Orleans, Louisiana from Ms. Sophia Pesch Gerard and her son, Norton Gerard. The purchase agreement provided for the closing to be performed by vendor's notary, who was appellant.
The act of sale was passed on May 2, 1977 in appellant's office at which time he advised all parties that the title company required certain curative work prior to the issuance of the policy. The evidence reflects that all parties, including appellee were apprised of this problem sometime prior to the closing date but were all in agreement that the sale should be closed anyway. At the closing appellant advised that he had already begun the necessary steps to satisfy the title company's requirement, and that it only would be a week to ten days before the act could be recorded and the policy issued. It should be noted that appellant did not do the title examination, nor did he have any connection with the title insurance company other than ordering same for the benefit of appellee. He did not receive a fee for ordering same, but merely did so at the request of appellee.
The sale was not recorded until March 21, 1979 and the title policy was not delivered until October 21, 1981. At trial, appellee attempted to prove that because of the delay of these two items she is entitled to damages for emotional distress, lost wages, medical expenses and loss of a low interest loan for remodeling. Appellee alleged, and proved numerous demands upon appellant to perform these two acts.
Appellant does not deny his tardiness in performing these duties, but argues that the matter is prescribed by virtue of the one year prescriptive period. He argues that appellee had knowledge of the tort for which she sues as of November, 1978, the date on which she first sought legal counsel to assist her, yet failed to institute these proceedings until August 3, 1980.
Although appellant was acting primarily in a notarial capacity, we feel the jurisprudence dealing with legal malpractice is relevant and controlling. Although dealing *227 with medical malpractice our Supreme Court in Sciacca v. Polizzi, 403 So.2d 728 (La.1981) pointed out that the nature of the duty breached should be determinative of whether a cause of action is in tort or in contract. In Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir. 1983) our brethern of the First Circuit analyzed the Sciacca, supra, case to the legal malpractice cause of action and concluded:
"Conceptually, the action for legal malpractice is no different than the action for medical malpractice. Both entail a deviation from the accepted standard of care of the profession. Although the attorney-client relationship gives rise to an implied warranty of the attorney to use his best professional skill and judgment, this duty is legal rather than contractual in nature, and a breach of this duty amounts to a tort. (citations omitted). Only when an attorney breaches an express warranty of result does an action for breach of contract arise." Cherokee Restaurant, Inc., supra at 998.
Although the Cherokee decision indicates that a malpractice action against an attorney will normally prescribe in one year, it does not rule out the ten year limitations in those instances "... when an attorney expressly warrants a particular result, i.e. guarantees ... title to property ... or agrees to perform work and does nothing whatsoever ..." Id. at 999. We followed the reasoning of Cherokee Restaurant, Inc. in Sturm v. Zelden and Zelden, 445 So.2d 32 (La.App. 4th Cir.1984). Although we held that the one year prescriptive period was applicable in that case, we also recognized that an action based on legal malpractice could be either contractual or delictual in nature.
In the instant case, appellee and appellant were placed in a legal relationship whereby appellant was called upon to perform his professional and legal duties as a Notary. Among the legal duties of a Notary[1] when passing an act of sale are the obligations to order a mortgage certificate, conveyance certificate, to file with the assessor and to record their acts within forty eight hours. La.C.C. Articles 3370 and 2255; La.R.S. 9:2928 and 2921; La. R.S. 35:281. Clearly the obligation to record is a legal one, and following the reasoning of the above cited cases the applicable prescriptive period is one year for a breach of that obligation.
Article 3492 of our Civil Code provides:
"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."
In Henderson v. Diamond Datsun, Inc., 413 So.2d 542 (La.App. 4th Cir.1982) we stated:
"Prescription does not begin to run until the plaintiff has knowledge of both the tort and resultant damages; until a cause of action has manifested itself with sufficient certainty to be capable of proof in a court of law." Id. at 544.

By appellee's own admission she contacted appellant the week after the sale to demand a certified copy of the act and the title insurance. Approximately six months thereafter she personally visited with him to inquire as to the delay. On November 14, 1978 she obtained legal counsel to aid her in resolving the dispute. Clearly as of that date she had sufficient knowledge of the tort and resultant damages sufficient to begin the running of prescription. We therefore hold that any damage she may have sustained from the failure to record the act has prescribed.
The problem of procuring the title policy however, is of a different nature. There is no legal obligation to secure title insurance. Appellant, however, did promise to secure one for appellee in connection with the act of sale. Although the evidence is clear he was to receive no fee in connection therewith, we consider his promise to procure title insurance as part and parcel of the entire transaction, and he did obligate himself to a particular result. *228 See, Cherokee Restaurant, Inc., supra. In that instance, his obligation was purely contractual, and thus subject to the ten year limitation. That obligation has not prescribed.
We now turn to the question of what damages are attributable to the failure to record, and what damages are the result of the failure to deliver the title policy. The award made by the trial judge was $1,500.00 for legal fees, and $2,500.00 in general damages. According to the statement for legal services submitted to appellee, the charges were based on 19 hours of work at $75.00 per hour, plus $75.00 in costs. Since this document is the only evidence of legal charges, and since the sale was recorded on March 21, 1979 which constitutes approximately one-half of the total time shown on the statement we reduce the legal fee portion of the judgment to $750.00.
Although the trial court awarded $2,500.00 for general damages, his reasons state:
"The medical testimony indicates that Mrs. Anderson was a very unstable person for a considerable period of time, proceeding (sic) this transaction. The history given by Mrs. Anderson indicates that she has many factors in her life which contributed to her anxiety and whereas the Court is certain that this was an upsetting to Mrs. Anderson, the Court cannot find that this incident caused, or materially contributed to her loss of employment or current medical breakdown. The Court cannot assume that the Improvement loan applied for would have been granted had Mrs. Anderson persisted."
Based on these reasons we assume the $2,500.00 in general damages was for appellee's inconvenience and aggravation. Since we have determined that appellee's claim for damages for appellant's failure to record has prescribed we reduce the award to $1,250.00. However, since the lower court failed to find causal connexity between appellee's medical problems, and loss of employment with the breach of contract by appellant, we will reverse that portion of the judgment ordering appellant to pay the expert fees of Dr. Sanders, Dr. Wolfson and Mr. Roy Swayze.
Accordingly the judgment of the lower court is amended as follows: $750.00 for legal fees, $1,250.00 for general damages and costs of $181.00. In all other respects the judgment is affirmed.
AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] We are referring herein to those obligations incumbent upon a Notary passing an act of sale on immovable property located in Orleans Parish.