472 So.2d 205 (1985)
Latmore ELZY
v.
ABC INSURANCE COMPANY et al.
No. CA 2528.
Court of Appeal of Louisiana, Fourth Circuit.
June 17, 1985.
Writ Denied September 27, 1985.
*206 Terrence J. Lestelle, New Orleans, for plaintiff.
Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendants.
Before REDMANN, C.J., and SCHOTT and BARRY, JJ.
REDMANN, Chief Judge.
A former client appeals from a judgment that dismissed on peremptory exception, La.C.C.P. 927, his malpractice action against his former attorney as prescribed by the one-year tort prescription of former La.C.C. 3536 (now art. 3492).
Plaintiff argues that the factual dispute as to when prescription began to run should have been decided not by the judge but by the jury his petition requested; that the lawyer's warranting results makes the *207 ten-year contract prescription govern; that in any case one year had not run; that contra non valentem prevents the running of the one year; and that the correct prescription for action "tantamount to inaction" by the lawyer is ten years rather than one. We reject these arguments and affirm.

I
We first reject plaintiff's argument that, when a petition has demanded trial by jury, only a jury can decide disputed facts relative to an exception of prescription. C.C.P. 929 provides that a peremptory exception filed before answer shall be tried prior to "trial on the merits of the case." (See also art. 929, providing post-trial trial of post-trial exceptions.) One entitled to jury trial is entitled only to have the facts relative to the merits of the case decided by a jury, and matters raised by exception are not part of the merits. One whose claim has prescribed is not entitled to have a trial on the merits of the case, not by jury and not by judge. One is not entitled to have the jury decide a fact-based exception of prescription, just as one is not entitled to have the jury decide a fact-based exception to the jurisdiction of the court, McGehee v. Brown, 3 La.Ann. 272 (1848). The judge does not invade the province of the jury by making factual determinations on the trial of exceptions.

II
We also reject, on the ground that his petition does not allege that defendant warranted results, plaintiff's argument that plaintiff's allegedly having "warranted results" makes contract prescription applicable. (Plaintiff's deposition does not support such an allegation, for it speaks only of a promise that "doctor bills and stuff like that, I wouldn't have to worry about that, it would be taken care of the rest of my life ... would be taken care of by insurance, you know"presumably, at least in part, a reference to workers' compensation benefits and hardly the language of a warranty of results in a related tort suit. Plaintiff's testimony at trial that the lawyer promised that when elected judge in Orleans parish he would rule favorably on plaintiff's tort suit in St. Bernard parish is preposterous. The trial judge rejected all of plaintiff's testimony, declaring: "To put the matter squarely, the court simply does not believe plaintiff and his witnesses." Moreover, the parties' having entered a written contingent fee contract is itself inconsistent with their having entered a "warranted results" contract, whatever declaration of expectations the lawyer may have made. It therefore appears that "the grounds of the objection cannot be removed," C.C.P. 934, and we therefore do not remand to allow amendment to allege a "warranted results" contract.)

III
Even if the basic claim against the lawyer is governed by the one-year tort prescription rather than the ten-year contract prescription (as we hereafter decide), plaintiff contends that one year did not pass between his learning of the 1970 prescription of his personal injury claim and his filing of this suit on October 2, 1981. We reject that factual contention because the trial judge's contrary conclusion is supported by this record, and is not clearly wrong, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). He found that plaintiff knew of his possible malpractice claim against the lawyer at least by the time of his August 22, 1980 conference with two other lawyers.

IV
We also disagree that the doctrine of contra non valentem non currit praescriptio applies to prevent prescription's running. In view of the finding that plaintiff in fact knew over a year before this suit of the need to sue his former lawyer, plaintiff's contra non valentem argument is based only on the fact that five lawyers would not handle this malpractice case against the former lawyer, now a judge: "the refusal of a litany of lawyers to take such an unpopular case against an active judge resulted *208 in an inability of plaintiff to bring his action."
Contra non valentem is "but an application of the long-established principle of law that one should not be able to take advantage of his own wrongful act," Nathan v. Carter, 372 So.2d 560 (La.1979). It therefore may well be applicable while a lawyer has concealed his fault from the client or has otherwise prevented the client from bringing suit.
That principle does not apply, however, merely because some lawyers refuse employment to bring a legal malpractice suit, without any threat or the like from the intended defendant. The reluctance of many doctors, because of personal and professional friendship or other cause, to testify against a fellow doctor charged with medical malpractice is well known. For similar reasons many lawyers are reluctant to sue fellow lawyers (whether or not they may have since become judges).
Moreover, a legal malpractice suit is at best a difficult one, for to win one not only must prove that the first lawyer was at fault in his professional actions, but also must prove that plaintiff would have won the personal injury (or other) suit that the first lawyer bungled. It is easy to say, in a case like ours, that the first lawyer did not perform as well as one is entitled to expect: but it is not easy to prove that, if he had performed properly, plaintiff would have won a personal injury award. The complexity of legal malpractice suits (especially if the client cannot afford to pay the new lawyer but can only promise a contingent fee if the lawyer wins the suit) may itself dissuade some lawyers from undertaking them.
Whatever the reasons of the five lawyers who declined to accept employment by plaintiff to bring this suit, there is no evidence whatever that their refusal was influenced in any way by the former lawyer, now judge, rather than by all the usual considerations that influence any other decision by a lawyer to accept or to refuse employment to bring a lawsuit.
We therefore cannot say that the one-year prescription could not begin to run until the plaintiff could find a lawyer who would file the legal malpractice suit.

V
We turn, then, to the question of whether tort or contract prescription governs the claim against the lawyer for failure to provide the expected representation of the client.
The facts are that plaintiff suffered dire personal injury at work on November 30, 1969 and by written contract dated March 12, 1970 employed the lawyer to bring a tort suit. The lawyer assigned the case to a now deceased associate who, on June 30, 1970, filed an "action to perpetuate testimony with interrogatories" against plaintiff's tort-immune corporate employer, for the purpose of discovering the names of certain corporate officers. That proceeding was dismissed August 31, 1970 on the employer's exception of improper venue. A similar proceeding was then filed in a proper parish on October 15, 1970. Then, on the last day of the prescriptive year, November 30, 1970, the associate filed a petition for damages against the employer's unnamed and otherwise unidentified "officers and directors." As a consequence the personal injury claim was lost by the prescription of one year.
A lawyer who agrees to represent a client in a possible tort claim for on-the-job injury undertakes a contractual obligation in favor of the client. Unless otherwise specified between them, the lawyer impliedly agrees (1) to investigate the claim to decide whether suit should be filed and, if so, (2) to determine against whom suit should be filed and (3) to file the suit against the persons determined to be proper defendants. (The reasonable lawyer does not, of course, undertake a contractual obligation that his determination of cause and of correct defendants will be infallible; he does not "warrant results." It has been said that, in the absence of an express warranting of results, he undertakes only "to exercise ... that degree of *209 care, skill and diligence which is exercised by prudent practicing attorneys in his locality." Ramp v. St. Paul Fire and M. Ins. Co., 263 La. 774, 269 So.2d 239, 244 (1972).) To characterize those obligations as contractual, however, because indisputably arising from contract, does not solve the question of whether the tort prescriptive period may apply to an action for their breach.
The general rule of law in Louisiana is that "the breach of a contract by means of a tort ... furnish[es] ground for an action for breach of contract.... The measure of damages may be different for the injury caused by an act ... viewed as a breach of contract or as a tort; and, clearly, the party injured should be entitled to the one or the other action accordingly as his interest may dictate." Illinois Central Rr. v. New Orleans Terminal Co., 143 La. 467, 78 So. 738, 740 (1918); Lafleur v. Brown, 223 La. 976, 67 So.2d 556 (1953); C.W. Greeson Co. v. Harnischfeger Corp., 219 La. 1006, 54 So.2d 528 (1951); American Heating & P. Co. v. West End Country Club, 171 La. 482, 131 So. 466 (1930).
That general rule admits exceptions, however. Perhaps the most common is that the breach (as by negligent operation of its vehicle) of a common carrier's contract to carry its passenger safely gives rise to a tort action, governed exclusively by the tort prescription of one year.
Another exception pertains to professional malpractice cases. It has been held that the law in Louisiana imposes upon a doctor, once he undertakes to render medical treatment (with or without an express or implied contract), a duty to treat with reasonable skill, and that any claim for damages for breach by malperformance of that duty is therefore a tort, prescribed by the one-year tort prescription and not the ten-year contract prescription, notwithstanding that the identical duty was imposed upon the malperformer by contract. Kozan v. Comstock, 270 F.2d 839 (5 Cir.1959). The Louisiana supreme court in 1981 adopted Kozan's holding. Sciacca v. Polizzi, 403 So.2d 728 (La.1981).[1] A similar ruling has been applied to legal malpractice claims. Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1 Cir.1983); Anderson v. Hinrichs, 457 So.2d 225 (La.App. 4 Cir. 1984), writ denied 462 So.2d 192 and 196; see also Sturm v. Zelden and Zelden, 445 So.2d 32 (La.App. 4 Cir.1984).
On the other hand, claims for damages from nonperformance, rather than malperformance, of a contract for medical treatment have been held governed by the ten-year contract prescription. Brooks v. Robinson, 163 So.2d 186 (La.App. 4 Cir.1964), writ refused 165 So.2d 481. Contract prescription is also held applicable to nonperformance (as opposed to malperformance) of a lawyer's contractual obligation to obtain title insurance for a client (but not to his statutory obligation as a notary to record the deed within 48 hours), Anderson, supra, and to a lawyer's "allowing petitioner's original claim to prescribe without action" (but not to "any ex delicto claim plaintiff might have"), Ambrose v. Roberts, 393 So.2d 132, 133, 134 (La.App. 3 Cir. 1980), writ refused 394 So.2d 1234.
*210 Sciacca v. Polizzi, supra, cited Prosser, Law of Torts (4th ed.), ch. 16, "Tort and Contract," which notes the development of the distinction between nonfeasance and misfeasance of contractual obligations in English law as early as 1400 A.D. Nonfeasance was exclusively a breach of contract; misfeasance could be a tort (as well). "[T]he more or less inevitable efforts of lawyers to turn every breach of contract into a tort" were efforts to recover greater damages for an injured party than available for breach of contract. What was at first an election available to an injured party has become, in Louisiana, the exclusive remedy in any case of malperformance of a contract to render medical or legal services.
That being the state of the Louisiana law, the question before us is whether defendant lawyer's behavior was nonperformance of his contract and therefore a simple breach of contract governed by contract prescription of ten years, or malperformance of the contract, governed by the tort prescription of one year.
We deem it a close question. It would not be unreasonable to treat a suit against unnamed executive officers as if no suit at all. But here the lawyer did file two other proceedings in addition to that suit, in an effort (albeit without satisfactory results) to learn the names of the appropriate officers so as to be able to bring a proper suit. Plaintiff also concedes at least an hour's investigatory discussion with himself as well as photographing of his physical injuries. Though the lawyer's performance appears not to have satisfied the duty of "care, skill and diligence" that he owed the client (see Ramp, supra), we cannot say, especially considering the Louisiana supreme court's emphatic ruling in Sciacca, that the amount of activity shown on the client's behalf is the equivalent of no activity at all, is nonperformance rather than malperformance of the lawyer's undertaking to represent the client.
We cannot say that the trial court erred in applying the one-year tort prescription to plaintiff's claim.
Affirmed.
NOTES
[1] Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963), occasionally cited for such a holding, did not consider the question because damages for breach of a contract for ordinary dental care were not there demanded. The Phelps opinion describes the suit as "for damages in tort for alleged malpractice ... and alternatively, for damages for the breach of contract warranting particular results." Id. 150 So.2d at 36 (emphasis added). (Thus the petition in Phelps adopted the Kozan view, making it unnecessary for the Phelps court to consider it.) The opinion then merely recites a factual conclusion that plaintiff knew of the damage over a year before suit, "and therefore as a matter of law the tort claim had prescribed.... Therefore the remaining issue ... is the plaintiff's alternative demand, i.e., the existence of a contract ... wherein specified results were warranted...." Id. 150 So.2d at 37 (emphasis added). The court then recited the presumably universal principle that a doctor's agreement to treat does not imply an "undertaking to cure, but only an undertaking to use ordinary skill and care" and therefore a doctor is not liable for mere unfavorable results (though "Of course a physician might contract specifically to cure and he would be liable on his contract for failure ...").