563 So.2d 965 (1990)
LOUISIANA NATIONAL BANK OF BATON ROUGE
v.
J.E. JUMONVILLE, Jr.
No. 89 CA 0699.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
A. Michael Dufilho, Baton Rouge, for plaintiff-appellee.
J.E. Jumonville, Jr., Ventress, pro. per.
Before COVINGTON, C.J., WATKINS, J., and DOHERTY, J. Pro Tem.
LEWIS S. DOHERTY, Judge Pro Tem.[*]
J.E. Jumonville, Jr., (defendant) appeals[1] from a summary judgment in favor of Premier National Bank Association[2] (plaintiff) rendered on November 17, 1988, on a promissory *966 note executed by defendant on August 30, 1984, in the principal sum of $5,000,000.00 and payable on demand. The note was secured by a collateral chattel mortgage note in the same amount, secured in turn by the pledge of a collateral chattel mortgage which mortgaged six horses in favor of LNB. Together with interest, late charges and attorney's fees, the judgment rendered by the trial court was in an amount in excess of $5,500,000.00.
Defendant argues on appeal that the granting of the summary judgment in favor of plaintiff should be reversed because genuine issues of material fact were presented as to the existence and terms of a verbal agreement between the parties which, defendant alleges, rendered the lawsuit premature. Plaintiff responds that the trial court was correct in its ruling that parol evidence was inadmissible to vary the terms of the note and that, based on depositions and affidavits as well as the written documents themselves, no issue of material fact is raised.
Defendant originally urged an exception of prematurity to this proceeding,[3] which was denied by the trial court. In opposition to the plaintiff's motion for summary judgment, he re-urged the same defense in effect: that prior to executing the note, a verbal agreement was reached between defendant and officers of LNB that the note would not become due until offspring of the six mortgaged horses were produced, matured, and marketed for syndication. At the hearing on the exception of prematurity, the trial court ruled that since the note was a demand note, and since there was no acceptable proof that would vary it, defendant therefore was in default at the time the suit was filed; he was likewise in default for not paying interest, and for failing to keep the mortgaged horses insured.
At the hearing on the motion for summary judgment, the trial court, presented with the same defense, stated in oral reasons for judgment that defendant breached his contract both by failure to maintain insurance on the horses, and to provide LNB with current financial information as it had required. The court went on to find that it was an "absolute legal impossibility for Mr. Jumonville to prove his claim that the money was not due when the suit was filed... what he's trying to do ... is to change the express terms of a written contract by parole (sic) evidence, which the law would not allow him to do ... under any circumstances."
Plaintiff argues on appeal that defendant was precluded from raising the same defense at the hearing on the motion for summary judgment as was previously considered at the hearing on the exception of prematurity because of the "law of the case." Plaintiff cites Elzy v. ABC Insurance Co., 472 So.2d 205 (La.App. 4th Cir. 1985) as authority for the notion that matters raised by exception cannot be considered at a jury trial on the merits. This may be true; however, the issue in Elzy was whether a jury could determine a fact-based exception of prescription at trial. Elzy is not relevant here. The trial court's ruling on the dilatory exception of prematurity was an interlocutory judgment, and defendant may re-urge his defense subsequent to that ruling. LSA-C.C.P. art. 1841. Plaintiff's position would transform an interlocutory judgment into a final one.
In support of its motion for summary judgment, plaintiff introduced various exhibits: the note itself, the collateral chattel mortgage note, the act of collateral chattel mortgage, and the pledge agreement. In opposition, defendant introduced the depositions of the bank officer responsible for initiating the loan to defendant (McCoy); the bank officers responsible for servicing the loan (Merritt and Barrentine); the attorney who notarized the documents (McDonald); and two witnesses to the documents (LaFleur and DeLage). Over objections of plaintiff's counsel, defendant proffered into evidence the deposition of defendant Jumonville.
*967 The trial court found, and we agree, that the evidence clearly showed a dispute as to the existence of a verbal agreement between LNB and defendant as to when the note would be paid. Jumonville testified that he dealt directly with McCoy; that McCoy understood his business proposition, which was to attempt to breed quarterhorse mares to a Kentucky Derby thoroughbred and market the resulting foals; that the loan was to be repaid from the proceeds of that endeavor, which would not be completed until some time towards the end of 1986, when the foals would be mature enough to market and syndicate; and that his failure to pay the September, 1986 interest due on the $5,000,000 loan resulted from his belief that, when he syndicated the horses towards the end of 1986, he would repay the principal and the interest at the same time. The bank's understanding, according to McCoy's, Barrentine's, and Merritt's depositions, was that the sale of the "Alydar foals" was only one possible source of repayment; that Jumonville had promised, during negotiations concerning the loan, to pay back one-half of the principal amount by September 30, 1986; that there was never any waiver of the interest payment due September 1, 1986; that Jumonville, in any event, had failed to maintain insurance and to provide current financial information to the bank, despite repeated requests, and he was therefore in default at the time suit was filed under the terms of the act of collateral chattel mortgage itself.
The trial court apparently believed, however, that because defendant introduced parol evidence to prove a contemporaneous rather than subsequent verbal agreement which would have altered the terms of repayment of the note (which was payable on demand), there could be no material issue of fact because such parol evidence is inadmissible under LSA-C.C. art. 1848. If the evidence submitted in opposition to a motion for summary judgment is inadmissible as a matter of law, the mover cannot be deprived of its right to summary judgment. First National Bank of Jefferson Parish v. Campo, 537 So.2d 268 (La. App. 4th Cir.) writ denied 538 So.2d 578 (La.1989).
In Scafidi v. Johnson, 420 So.2d 1113 (La.1982), the Supreme Court held that parol evidence was admissible to show that the promise to pay a promissory note was conditional. Parol evidence is likewise admissible to show want or failure of consideration, non-performance of a condition precedent, or to show that the writing is only a part of an entire oral agreement between the parties. Scafidi, 420 So.2d at 1115.
In Fly v. Hand, 376 So.2d 1016 (La. App. 1st Cir.1979), the defendant filed an exception of no cause or no right of action on the ground that the obligation was subject to a suspensive condition that the note was to be paid only if a general contractor made a draw from a building project, which condition never occurred. This court found that parol evidence was admissible to show failure of consideration, and reversed the granting of a summary judgment by the lower court.
Fly distinguished an early Supreme Court case, Fudickar v. Inabnet, 176 La. 777, 146 So. 745 (1933), which had held that parol evidence was inadmissible to show that a note, given for a gas lease, was to be paid from the proceeds of the lessee's part of the gas. In Fly, as in Scafidi, the thrust of the defense to the note was that there was a condition precedent to the payment of the note. In Fly, the condition was that the note would be paid only if a general contractor made a draw from a building project; in Scafidi, the condition was that there would be sufficient dividends received in order to repay the note.
In Fudickar, however, the Supreme Court held that the parol evidence was offered to show that at the time the note was executed, an independent agreement was entered into between the parties providing that the note would be paid in a different manner than that stipulated in the note itself. In Fly and Scafidi, the parol evidence went to show failure of consideration; in Fudickar, there was no failure of consideration for the issuance of the *968 note, but rather a dispute as to how it would be paid.
Defendant here alleges no condition precedent or failure of consideration which would constitute an exception to the parol evidence rule, nor does he show that the note was only part of an entire oral contract between the parties. He admitted in his deposition that he owed the money to plaintiff. His main argument is that his agreement, made solely with McCoy and not the other officers of LNB, was that the note would not be paid until the "Alydar foals" were marketed, not that he would never have to pay it unless the foals were produced and marketed.
After the initial meeting with McCoy to discuss defendant's business operations, there were no subsequent discussions with bank officials concerning the "Alydar foals" as a sole source of repayment. Barrentine testified that although defendant had discussed how he syndicated horses as a way of paying back debt, he never told Barrentine that only the "Alydar foals" syndication would be available as a source of funds to repay the loan. Merritt, who was present with McCoy at the initial meeting with defendant, testified that he did not remember defendant's saying that he planned to use the offspring from the breeding of Alydar to defendant's mares as a means of ultimately repaying any future debt to LNB. McCoy testified that the Alydar foals were not specifically mentioned as a source of repayment at the August 8th meeting when the first of the funds were actually advanced, and at the initial presentation made by defendant to Merritt and McCoy, there was no talk at all of any actual loan being made. Jumonville testified that he told McCoy at the initial meeting he would like a line of credit, but that he did not need the money immediately.
From the evidence presented by defendant in opposition to plaintiff's motion for summary judgment, we conclude that defendant has never contested that he owed the money, only that he did not owe it when LNB said he did; thus parol evidence cannot be admitted in this case to vary the terms of the instrument. Scafidi's facts were clear that the defendant was actually never expected to pay the note. Fudickar's prohibition against parol evidence to vary the terms of repayment specified on the face of the note itself is appropriate here. We agree with the trial court that there is no issue of material fact presented by these facts, and we affirm the award of a summary judgment to plaintiff as a matter of law. Because of our disposition of the case, we do not address plaintiff's argument that defendant was in default on the note for failure to keep the horses fully insured and for failure to provide the bank with current financial statements.
The judgment of the trial court is AFFIRMED. All costs are to be assessed to defendant.
AFFIRMED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem. by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] Defendant was represented throughout the proceedings until the hearing on the motion for summary judgment, at which time he appeared in proper person. He appeals in proper person from the judgment below.
[2] Premier National Bank Association is successor by merger of LNB of Baton Rouge.
[3] Defendant also urged exceptions of non-joinder of necessary parties and non-joinder of indispensable parties to this proceeding, which were likewise denied by the trial court.