**WHITNEY NATIONAL BANK, Plaintiff,**

v.

**Gerald A. DERKS and Jacklyn J. Derks, jointly and severally, Defendants.**

**No. 1:94–CV–241.**

United States District Court, W.D. Michigan, Southern Division.

July 7, 1995.

Timothy J. Curtin, Jeffrey R. Hughes, Varnum Riddering Schmidt & Howlett, Grand Rapids, MI, for plaintiff.

Douglas A. Dozeman, Shaun M. Murphy, Warner Norcross & Judd, Grand Rapids, MI, for defendants.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This is an action to enforce rights under seven promissory notes and related security agreements. The Court's jurisdiction is premised on the parties' diversity of citizenship. 28 U.S.C. § 1332. Now before the Court is plaintiff's motion for partial summary judgment under Fed.R.Civ.P. 56(a).

### I

During the 1980's, plaintiff Whitney National Bank loaned substantial sums of money to defendants Gerald A. Derks and his wife, Jacklyn J. Derks, and to two partnerships with which Gerald Derks was associated. The monies were loaned pursuant to seven promissory notes setting forth the agreed terms of repayment. Plaintiff alleges defendants are in default of their obligations under all seven notes.

In the present motion for partial summary judgment, plaintiff contends there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on four of the notes, and related security agree-

ments.[1,2] All four notes are expressly made payable on demand or by monthly payments at prescribed interest rates. According to the complaint, the principal amount owing on the four notes is $373,837.47. In addition, plaintiff's motion is supported by the affidavit of Whitney National Bank Assistant Vice President Louis R. Dubos, attesting that the Derkses are in default on all four notes and that the total amount owing, inclusive of interest, as of April 15, 1994, is $647,132.77, and that interest continues to accrue on the principal balance of the obligations at the per diem rate of $110.2437.

Defendants do not dispute the accuracy of these figures, but deny that they are in default at all. They contend the terms of the promissory notes and related security agreements do not reflect the parties' entire agreements. The subject notes are said to be merely a small part of a larger history of business dealings between them and Whitney National Bank. During the course of this history, they contend, a mutual understanding developed to the effect that satisfaction of their obligations was contingent upon either a turn-around in the depressed New Orleans real estate market or the Derkses' recovery of a monetary judgment in otherwise unrelated litigation pending in the Michigan Court of Claims, the "Nordhouse Dunes litigation."[3] Because the New Orleans market has not yet sufficiently recovered and the Nordhouse Dunes litigation is still pending, the conditions precedent to repayment on the notes are said not to have occurred.

Defendants admit this mutual understanding has not been reduced to writing, but contend it is evidenced by (1) security agreements entered into by the Derkses in 1989 and 1990, assigning to Whitney National Bank their rights to proceeds recovered in the Nordhouse Dunes litigation; (2) Gerald Derks' affidavit attesting to an oral representation by Whitney National Bank Senior Vice

---

1. The four notes here at issue are described in the complaint as follows:

    (1) Note 1, made by the Derkses on May 26, 1988, in the original principal sum of $200,000, payable to Whitney National Bank on demand or by monthly payments, bearing interest at the rate of 10% per annum, with a principal amount due and owing of $153,603.17, plus interest;

    (2) Note 2, made by the Derkses on September 6, 1988, in the original principal sum of $100,-000, payable to Whitney National Bank on demand or by monthly payments, bearing interest at the rate of 10% per annum, with a principal amount due and owing of $76,801.57, plus interest;

    (3) Note 3, made by the Derkses on May 8, 1988, in the original principal sum of $183,-334.95, payable to Whitney National Bank in 11 monthly installments of $3,200 and principal and interest at the rate of 10% per annum, final payment of balance due to be made by May 8, 1989, with a principal amount due and owing of $135,752.57, plus interest; and

    (4) Note 4, signed by Gerald Derks as co-maker on May 25, 1984, in the original principal sum of $50,000, payable to the National Bank of Commerce in Jefferson Parish (predecessor in interest to Whitney National Bank) on demand or in 19 quarterly installments of $2,500, plus interest at the rate of 1% over the prime rate, final payment of balance due to be made by May 25, 1989, with a principal amount due and owing of $7,680.16, plus interest.

2. The related security agreements are described as follows:

    (1) Assignment by the Derkses on June 9, 1989, to Whitney National Bank, as security for payment of the promissory notes dated May 8, 1988; May 26, 1988; and September 6, 1988, and as security for all other present and future obligations of the Derkses to Whitney National Bank, of the net proceeds of the Derkses' share of any monetary recovery, up to $5,000,000, in a lawsuit in which they are plaintiffs, currently pending in the Michigan Court of Claims, styled *Carnagel Oil Associates, et al. v. State of Michigan, et al.*, Case No. 88–11484–CM, the "Nordhouse Dunes litigation";

    (2) Security Agreement entered into by the Derkses on July 13, 1989, granting to Whitney National Bank a security interest in all of their rights in the Nordhouse Dunes litigation up to $5,000,000, to secure all of their obligations, present and future, to the Bank;

    (3) Act of Pledge and Assignment, dated July 13, 1989, consistent with the foregoing security agreement of the same date, including assignment by the Derkses to the Bank of the right to substitute itself for them in the prosecution of the Nordhouse Dunes litigation at its option upon nonperformance of their obligations; and

    (4) Security Agreement dated March 13, 1990, essentially accumulating and granting anew the rights conferred upon the Bank in the above three instruments.

3. Mr. and Mrs. Derks are among the plaintiffs in *Carnagel Oil Associates, et al. v. State of Michigan, et al.*, Mich.Ct. of Cl. No. 88–22848–CM, a condemnation action in which a judgment for the plaintiffs on the issue of liability has been upheld by the Michigan Court of Appeals, but in which the issue of damages has yet to be resolved.

President Harry C. Stahel to the effect that the Bank would not initiate litigation to enforce the Derkses' obligations; and (3) Whitney National Bank's history of forbearance. These matters, defendants argue, are sufficient to create a genuine issue of material fact and preclude summary judgment at this time.

## II

Whitney National Bank's motion for summary judgment requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Fed.R.Civ.P. 56(c). See generally *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The Court must determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party identifies elements of a claim or defense which it believes are not supported by evidence, the nonmovant must present affirmative evidence tending to show a genuine dispute of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Production merely of a "scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2512. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita, supra,* 475 U.S. at 586, 106 S.Ct. at 1356.

The substantive law identifies which facts are "material." Facts are "material" only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A complete failure of proof concerning an essential element necessarily renders all other facts immaterial. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

## III

With reference to the substantive law of Louisiana, Whitney National Bank argues the evidence defendants would rely on to avoid their obligations under the subject notes is not admissible and should not be considered by the Court.[4] In *American Bank v. Saxena,* 553 So.2d 836 (La.1989), the Louisiana Supreme Court recognized that summary judgment is appropriate to enforce a negotiable instrument where the debtor establishes no defense against enforcement. See also, *Premier Bank Nat'l Ass'n v. Percomex,* 615 So.2d 41, 43 (La.App.1993). Once the plaintiff, as holder of a promissory note, produces the note and proves the maker's signature, it "is incumbent upon the defendant to demonstrate the existence of a triable issue by specific, admissible evidence." *Id.* A defense may be established through parol evidence, but parol evidence is not admissible to vary the terms of an instrument. *Id.; Louisiana Nat'l Bank v. Jumonville,* 563 So.2d 965, 967–68 (La.App.1990). See also L.S.A.–C.C. art. 1848 (prohibiting admission of parol or other extrinsic evidence to negate or vary terms of a writing but allowing admission for limited other purposes, such as to show modification of the writing by subsequent and valid oral agreement). Parol evidence is admissible "to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties." *Ouachita Nat'l Bank v. Gulf States Land & Development,* 579 So.2d 1115, 1121 (La.App. 1991).

**4.** There is no dispute between the parties that the law of Louisiana governs the questions presented by the instant motion.

## IV

■ That Whitney National Bank has made its prima facie case is not disputed. The Derkses acknowledge their duty to repay monies borrowed. *When* repayment is due is the question posed by their defense. In arguing that there was an unwritten understanding or "overall agreement" between the parties, they rely first on the assignments and security agreements granting Whitney National Bank their interest in the Nordhouse Dunes litigation proceeds. These written, signed instruments are not parol evidence, of course, and are properly considered by the Court. However, none of them suggests, on its face, that the Derkses' repayment obligation in any of the subject notes is postponed until the conclusion of the Nordhouse Dunes litigation. None of them purports to alter the Derkses' express promise to repay the borrowed funds on demand or by monthly installments.

Defendants maintain, nonetheless, that the security agreements reflect Whitney National Bank's knowledge of their inability to pay. To have entered into the security agreements, even though the Derkses had not been making regular monthly payments on the notes, is said to reflect the Bank's "overall agreement" to waive its right to demand performance in accordance with the terms of the notes and to postpone its expectation of recovery until the Nordhouse Dunes litigation yielded a favorable monetary judgment.

Defendants' construction of the security agreements suggests an "overall agreement" that contradicts not only the repayment terms of the underlying notes, but also the following provision, which appears in each of the four notes in substantially similar form:

> The provisions of this note may not be waived or modified except in writing, signed by the Bank. No failure or delay of the Bank in exercising its rights shall be construed as a waiver.

The fact that the parties did subsequently enter into written security agreements, which did not, however, waive or modify any provision of any of the promissory notes, simply does not legitimize or substantiate the Derkses' argument that the subsequent agreements evidence a larger overall agreement wherein provisions of the notes were waived or modified. Defendants' construction of the security agreements is not supported by any corroborative statement of a Whitney National Bank representative, written or oral. It appears to constitute pure supposition, wishful thinking of the very sort expressly prohibited by the above-quoted provision. Moreover, the notion that a creditor taking a security interest to protect its rights thereby surrenders its option to otherwise enforce its rights is nonsensical.

## V

Defendants argue the significance of the security agreements becomes clearer when viewed in conjunction with other evidence. In particular, they rely on Mr. Derks' affidavit. Mr. Derks' affidavit describes generally the history of his relationship with the Bank, his and his partnerships' defaults, and the Bank's patience and cooperation with them. During the course of the Bank's cooperation with the "701 Magazine" partnership, of which Mr. Derks is a general partner, the Bank entered into negotiations with several of the limited partners. These negotiations resulted in the release of three of the limited partners from any claim of liability on an outstanding partnership note. To finalize the release, the Bank sought Mr. Derks' consent. Bank Senior Vice President Harry Stahel purportedly induced him to consent in the following manner:

> He advised me that it was in my financial best interest to execute the Release. He also advised me that if I executed the Release, Whitney would not seek to enforce any obligations that I owed to it and would resolve any outstanding obligations of ours without initiating litigation against us. In reliance upon his representations, I executed the Release.

Derks' affidavit, ¶ 9. Defendants contend these representations substantiate the existence of the "overall agreement." That is, they are said to confirm that the Bank had agreed not to enforce the subject notes according to their terms. Neither party has offered any other evidence refuting or substantiating the alleged representations.

Mr. Stahel's alleged representations are parol evidence offered to vary the explicit and unambiguous terms of the promissory notes. They are therefore not admissible unless offered to show the notes are only part of an entire oral contract between the parties. *Premier Bank, supra,* 615 So.2d at 43; *Ouachita Nat'l Bank, supra,* 579 So.2d at 1121. Yet, even if the representations are properly considered for this limited purpose, they are of little assistance to defendants.

Again, the "overall agreement" that defendants rely on is an agreement by Whitney National Bank not to require repayment until the New Orleans real estate market improved or the Derkses recovered a money judgment in the Nordhouse Dunes litigation. Defendants do not indicate when this agreement or "understanding" arose. Even today, however, the fulfillment of either alleged precondition to the Bank's right to enforce the Derkses' promises is a matter uncertain. That is, the parties still do not know when the market will improve or the Derkses will recover damages. Yet, the Derkses admit their promises would not be rendered null and void if neither condition were ever fulfilled; at some undefined point, they assert, the parties would simply have to renegotiate. The Derkses' own description of the parties' supposed "overall agreement," thus, is so indefinite as to undermine the plausibility of its existence.

Further, Mr. Stahel's alleged representations do not specifically corroborate the existence of the overall agreement asserted by the Derkses. While his representations reflect an attitude of patience and leniency, they do not support a finding that the Bank had agreed not to enforce the notes until the New Orleans real estate market turned around or the Derkses recovered damages in Michigan. Neither does Mr. Stahel's alleged oral promise not to sue the Derkses to enforce their obligations necessarily constitute a waiver of the Bank's right to "resolve their outstanding obligations" in other ways. That is, the alleged oral promise does not, on its face, purport to represent a waiver of the Bank's right to repayment in accordance with the terms of the notes. And even if it did, it would constitute not so much evidence of an overall agreement, but simply parol evidence of a separate and distinct agreement offered to contradict or vary the terms of the promissory notes, in direct contravention of the express requirement that waivers and modifications be in writing. Such evidence is not admissible to create a genuine issue of material fact. See *American Bank, supra,* 553 So.2d at 846; *Premier Bank, supra,* 615 So.2d at 43.

To the extent Mr. Derks may have been fraudulently induced to sign the release by an oral promise breached through the institution of this action, a question regarding the validity or enforceability of the release is presented. However, this question is not before the Court. While the question might have been raised through a counterclaim or separate action, it is not material to the question of defendants' liability on the underlying obligations here sued upon. *Id.*

## VI

Finally, defendants ask the Court to consider the history of Whitney National Bank's forbearance. The fact that the Bank has so long refrained from acting to enforce the notes in accordance with their terms is said to further substantiate the existence of the overall agreement.

Had the Court concluded in parts IV and V of this opinion that the other items of evidence relied on by defendants were admissible and probative, the Bank's history of forbearance might have had probative value. Standing alone, however, it is "a mere scintilla of evidence," clearly insufficient to create a genuine issue of material fact. *Anderson, supra,* 477 U.S. at 251–52, 106 S.Ct. at 2512; *Leahy v. Trans Jones, Inc.,* 996 F.2d 136, 139 (6th Cir.1993). Defendants ask the Court to do that which they, by the express terms of the notes, agreed not to do: to construe the Bank's failure or delay in exercising its rights as a waiver. The Court declines. The Bank may have voluntarily refrained from acting to enforce the notes for any number of reasons. It may have refrained out of courtesy toward a long-time business associate. Or it may have refrained out of pragmatic self-interest, waiting for the optimum time to maximize its recovery. No reasonable trier

of fact could conclude, however, based on the showing made, that Whitney National Bank intended to waive or ought to be deemed to have waived its right to seek repayment on the terms of the notes.

## VII

In sum, the Court concludes that Whitney National Bank has made out a prima facie case of entitlement to recovery on the four promissory notes. In response, defendants have failed to adduce sufficient evidence of a legitimate defense even to create a genuine issue of material fact. Whitney National Bank is therefore entitled to summary judgment on the four promissory notes described in note 1, *supra*. The Bank will be awarded judgment in the amount of $647,132.77, which includes principal and interest owed as of April 15, 1994, plus interest at the per diem rate of $110.2437 from April 15, 1994 to the present.

The Bank is also entitled to a declaration of its right to enforce the terms of the security agreements described in note 2, *supra*, including its right to substitute itself, at its option, as party plaintiff in the Nordhouse Dunes litigation, to satisfy the obligations owed it by the Derkses under the four promissory notes described in note 1, *supra*.

A partial judgment order consistent with this opinion shall issue forthwith.

## PARTIAL JUDGMENT ORDER

In accordance with the written opinion of the Court of even date,

**IT IS HEREBY ORDERED** that the motion of plaintiff Whitney National Bank for partial summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff is **AWARDED JUDGMENT** on the promissory notes described in note 1 of the Court's opinion in the amount of $647,132.77, plus interest at the per diem rate of $110.2437 from April 15, 1994 to the present.

**IT IS FURTHER ORDERED** that, defendants Gerald A. Derks and Jacklyn J. Derks having been found to have defaulted in their obligations under the four promissory notes, plaintiff may enforce its rights under the security agreements described in note 2 of the Court's opinion, including the right, at its option, to substitute itself for the defendants as a party plaintiff in the pending "Nordhouse Dunes litigation," *Carnagel Oil Associates, et al. v. State of Michigan, et al.,* Mich. Ct. of Cl. No. 88–11848–CM.