**Lawrence T. PALMER,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 90–16117.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 21, 1991.

Decided Oct. 2, 1991.

Ian L. Mattoch, Honolulu, Hawaii, for plaintiff-appellant.

Beverly A. Wee, Asst. U.S. Atty., Honolulu, Hawaii, for defendant-appellee.

Before D.W. NELSON, HALL and FERNANDEZ, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Lawrence Palmer appeals the district court's judgment in favor of the United States in an action under the Federal Tort Claims Act. 742 F.Supp. 1068. We conclude that the Hawaii Recreational Use Statute (HRUS) immunizes the government from liability. We therefore affirm.

## I

On June 23, 1988, Palmer visited the swimming pool at the Tripler Army Medical Center (TAMC) in Honolulu, Hawaii. Although not an employee, Palmer was permitted to enter the facility at no charge in order to accompany his grandchildren. The grandchildren were allowed to use the pool because their mother, Palmer's stepdaughter, worked at the TAMC. Palmer, however, was told not to use the swimming pool.

Palmer removed his shirt and shoes and relaxed in a lounge chair as he watched his grandchildren swim. He went to the patio area to retrieve his sunglasses. Palmer slipped and fell while descending a flight of six stairs on his way back to the pool area.

Palmer brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2401–02, 2671–80, alleging that the United States was liable for his injuries because its employees maintained the steps upon which the fall occurred. Following a bench trial, the district court ruled that the HRUS immunized the United States from liability for Palmer's injuries.

## II

The HRUS, Haw.Rev.Stat. §§ 520–1 to –8, provides that "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Haw.Rev.Stat. § 520–3. The immunity afforded an owner by the HRUS, however, is not extended to injuries resulting from willful or malicious omissions, injuries to a person who pays a fee to enter the land, or to injuries of "house guests." *Id.* § 520–5.[1] The statute's purpose is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Id.* § 520–1.

We review the district court's interpretation of a state statute *de novo. Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). The liability of the United States under the Federal Tort Claims Act is the same as that of a private citizen. 28 U.S.C. § 2674; *Proud v. United States,* 723 F.2d 705, 706 (9th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). Thus, if the HRUS would shield a private party in the government's position from liability for Palmer's injuries, then the district court was correct in holding that the HRUS protects the United States from liability in this case.

## A

Palmer's first argument is that the term "premises," as used in the HRUS, does not apply to urban swimming pools. Because the courts of Hawaii have not spoken to this issue, we look first to the language of the statute. *Brock v. Writers Guild of Am., West, Inc.,* 762 F.2d 1349, 1353 (9th Cir.1985). Nothing in the language of the statute limits its applicability to rural settings. Moreover, the HRUS

---

**1.** " 'House guest' means any person specifically invited by the owner or a member of the owner's household to visit at the owner's home whether for dinner, or to a party, for conversa- tion or any other similar purposes including for recreation, and include playmates of the owner's minor children." Haw.Rev.Stat. § 520–2(5).

specifically includes "swimming" as a recreational purpose.[2] Thus, Palmer's argument that the HRUS does not apply to urban swimming pools finds no support in the statute itself.

Palmer relies upon a number of cases from other jurisdictions holding that recreational use statutes do not apply to urban settings. *See, e.g., Gibson v. Keith,* 492 A.2d 241, 244 (Del.1985); *Keelen v. State,* 463 So.2d 1287, 1290–91 (La.1985); *Harrison v. Middlesex Water Co.,* 80 N.J. 391, 403 A.2d 910, 913–15 (1979); *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1, 6–9 (1986); *Ithier v. City of Philadelphia,* 137 Pa.Cmwlth. 103, 585 A.2d 564, 567 (1991). *But cf. Cedeno v. Lockwood, Inc.,* 250 Ga. 799, 301 S.E.2d 265, 267 (1983) (rejecting urban-rural distinction, focusing instead upon "the purpose for which the public is permitted on the property"); *Cassio v. Creighton Univ.,* 233 Neb. 160, 446 N.W.2d 704, 711 (1989) (rejecting urban-rural distinction, but refusing to extend immunity to indoor recreational activities or swimming pools). These courts reason that such statutes are intended to encourage landowners to grant access to rural properties which are difficult to supervise. Without the statute, rural property owners would be forced to forbid recreational users from enjoying their property in order to avoid liability for the users' injuries. *Gibson,* 492 A.2d at 246–50. At least one decision based the urban-rural distinction on the notion that rural property owners cannot effectively exclude trespassers from large, uninhabited tracts and therefore deserve a modicum of protection from liability for trespassers' recreational uses. *See Harrison,* 403 A.2d at 914. Most courts, however, extend protection from liability only when the owner permits recreational use of the property. *See Gibson,* 492 A.2d at 246–50. The accommodation provided by recreational use statutes is unnecessary, according to these cases, for urban recreational facilities because they are easy to monitor. *See Harrison,* 403 A.2d at 915.

We see nothing in the language of Hawaii's statute that makes a distinction between urban and rural properties. If the legislature wished to deprive urban property holders of qualified immunity, it could have easily done so. It is not our role as a court to rewrite the plain language of a state statute. *See Mansion v. United States,* 945 F.2d 1115 (9th Cir.1991) (rejecting argument that California recreational use statute applies only to land open to the "general public" when statute says "others"). Nor, for that matter, is it the business of municipalities to revise state statutes. Thus, Palmer's citation to municipal ordinances relating to swimming pool enclosures cannot alter our interpretation of a clear and unambiguous statute.

The United States has chosen to make the pool at TAMC available for recreational use free of charge. Thus, the HRUS is applicable to the pool under the plain, unambiguous language of the statute.

B

Palmer next argues that the United States should not be protected by the HRUS because Palmer was not engaged in "recreation" at the time of the accident. He argues that he was engaged in the non-recreational activity of supervising his grandchildren and was not permitted to use the swimming pool.

Even assuming that watching over one's own grandchildren is not a recreational activity, Palmer's services conferred no benefit upon the TAMC. *See Mansion,* at 1118 (rejecting argument under California statute that presence of retiree at military recreational facility conferred a benefit upon the facility by promoting good labor relations); *Cedeno,* 301 S.E.2d at 267 (purpose for which public is allowed on property is determinative). He was not there for the TAMC's purposes, but rather to facilitate his grandchildren's authorized use of

---

**2.** " 'Recreational purpose' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, *swimming,* boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites." Haw. Rev.Stat. § 520–2(3) (emphasis added).

the pool. Indeed, Palmer admits in his brief that he "had extended a service to his stepdaughter who would not have been able to have her children in the pool without Palmer's supervision." He was allowed on the property for his granddaughters' recreational purposes, which is the type of permissive use the HRUS seeks to encourage.

Moreover, Palmer's behavior was consistent with relaxation and recreation. He was lounging in the sun. We therefore conclude that he was engaged in a recreational activity for purposes of the HRUS. By affording immunity in this situation, the purpose of the HRUS to encourage landowners to make their recreational property available for use is served. *Hubbard v. Brown*, 50 Cal.3d 189, 266 Cal.Rptr. 491, 492–93, 785 P.2d 1183, 1184–85 (1990).

## C

Finally, Palmer contends that even if the HRUS immunizes the United States from liability, the government nonetheless is liable for Palmer's injuries because it voluntarily assumed a duty of reasonable care. He argues that by hiring lifeguards, washing down the steps, and generally maintaining the pool area, the United States voluntarily undertook a duty of reasonable care.

We disagree. Application of the HRUS precludes other theories of liability based upon mere negligence. Nothing in the language of the statute or its legislative history indicates that Hawaii intended the HRUS to apply only when the landowner fails to take any precautionary measures to ensure the safety of recreational users.

Palmer primarily relies on *Collard v. United States*, 691 F.Supp. 256 (D.Haw. 1988), and *Stephens v. United States*, 472 F.Supp. 998 (C.D.Ill.1979), to support his argument. We do not find these cases to be persuasive. *Collard* held that the United States voluntarily undertook a duty of reasonable care, despite the HRUS, by providing lifeguards and warning flags on a beach to which it allowed free public access. The authority underlying that hold-

ing is, however, questionable at best. *Collard* first relied on a series of Hawaii Supreme Court cases articulating the voluntary undertaking theory of liability. But the HRUS was not applicable in any of those Hawaiian cases. *Collard*, 691 F.Supp. at 260.

*Collard* also relied on *Stephens*. *Stephens* held that the government voluntarily assumed a duty of reasonable care by enacting safety regulations for a federal reservoir and conducting inspections. *Stephens*, 472 F.Supp. at 1012. *Stephens* is not persuasive, however, because the district court in *Stephens* erroneously believed itself bound by *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769 (1964). *Stephens*, 472 F.Supp. at 1010–11. Like the Hawaiian cases, *Nelson* had nothing to do with the applicability of a recreational use statute. Thus, neither *Collard* nor *Stephens* persuade us that the Hawaii Legislature intended an exception be made to the HRUS when a landowner gratuitously undertakes to make safer land upon which the public may recreate without charge.

The Tenth Circuit's opinion in *Klepper v. City of Milford*, 825 F.2d 1440 (10th Cir. 1987), is instructive. In *Klepper*, a man was injured while diving into a lake from his boat near a dock at the Milford city park. Interpreting the Kansas Recreational Use Statute, which is nearly identical to the HRUS, the Tenth Circuit wrote that:

> The RUS itself is a statutory modification of the common law of torts and provides for no liability for simple negligence. Instead, it provides for liability only where conduct is willful or malicious or where consideration is given in return for use of the recreational facilities. If the Kansas legislature had wanted to provide for additional exceptions, such as liability for negligent inspections, it could have so stated. To rule otherwise would have the effect of defeating the purpose of the RUS.

*Id.* at 1450. Similarly, Hawaii has not provided for an exception to the HRUS when the landowner engages in voluntary efforts to improve the safety of its property. We

refuse to create such an exception, particularly since the result might be to discourage efforts to make recreational facilities safer. *See id.*

### III

The HRUS shields the United States from liability for ordinary negligence. The judgment of the district court for the United States is therefore

AFFIRMED.