653 So.2d 226 (1995)
Johnny JOHNSON et ux., Plaintiffs-Appellants,
v.
LLOYD'S OF LONDON et al., Defendants-Appellees.
No. 26,813-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
Jay A. Pucheu, Marksville, Gregory Scott Moore, Monroe, for appellants.
Steven J. Levine, F. Scott Kaiser, Patricia H. Wilton, Baton Rouge, Robert M. Baldwin, Monroe, for appellees.
Before SEXTON, J., and CULPEPPER and PRICE, JJ., (Pro Tem.).
CULPEPPER, Judge Pro Tem.
Plaintiff, Johnny Johnson, sustained injuries on the rural, leased premises of the Webster's Bluff Hunting Club, Inc. His subsequent suit against the Club and its insurer, Lloyd's of London, was dismissed via summary judgment. In dismissing Johnson's action, the trial court concluded that the statutory immunity provided by Louisiana's Recreational *227 Use Statutes (RUS), LSA-R.S. 9:2791 and 9:2795, apply to the Club and its insurer. Johnson has appealed, arguing that the RUS do not apply under the facts of this case because his theory of liability is not based upon any implied warranties, assurances or other means of liability arising out of permission to use the land, but is based upon the breach of a duty specifically assumed by the Club. For the reasons set forth below, we affirm the trial court's judgment.

FACTS
In September 1991, Johnson fell from his own deer stand located on the Club's premises. He remained on the ground approximately 24 hours before being found by other members of his Club. In Johnson's subsequent suit against the Club and its insurer, he alleged that the defendants were liable:
For the damages sustained by JOHNNY JOHNSON and STEPHANIE JOHNSON that were caused by the negligent actions or inactions of WEBSTER, which include but are not limited to any or all of the following:
(a) Failing to implement any type of system that would advise WEBSTER of members on its premises with potential disabling injuries;
b) Failing to take any actions to locate JOHNSON after being advised that he was on the premises;
c) Failing to promulgate any rules to insure all persons injured on the premises would be discovered within a reasonable period of time; and
d) Other acts of negligence that shall be proven at the trial of the merits.
The above quoted allegations show that Johnson's claims were based on the alleged negligence of the Club. With respect to the first listed instance of alleged negligence, Johnson's petition stated that at least two weeks prior to his accident the Club had recognized the risk of possible injuries being sustained on the leased premises, and accordingly had decided that a check-in board would be placed at the hunting camp, and that all members who proceeded into the wooded area on the leased premises would be required to place a marker by their name. This would allow members to have knowledge that a particular person was still in the woods, and would insure that an individual who may have sustained injuries on the premises would not remain on the premises until he was discovered by mere chance. Johnson's petition went on to allege that despite the Club having appreciated the danger of not having a check-in board, the Club failed to implement a check-in system prior to his accident.
The motion for summary judgment, along with its attachments, establish that the Club was formed in 1988 as a non-profit corporation with the sole purpose of leasing and maintaining property on which its members could hunt, fish, and enjoy outdoor recreational activities. The Club leased approximately 2,500 acres of rural land in Union Parish from Manville Forest Products Corporation for hunting and fishing. The land was undeveloped with the exception of a few asphalt, dirt, and gravel roads; the nearest town was seven miles away; and there were a few adjoining landowners who owned small farms or country homes. The Club was never operated for profit; the dues charged to its members were used to pay for the lease and defray the cost of running the club. Johnson does not dispute any of these facts.
In opposition to the motion for summary judgment, Johnson noted that he asserted no liability against the Club or its insurer based upon his initial fall. Instead, he claimed that due to the Club's failure to look for him when there was reason to believe he was on the premises, and due to the Club's failure to follow its own procedures designed to prevent such occurrences, he lay on the ground for approximately 24 hours resulting in enhanced injuries. For these reasons, Johnson argued that Louisiana's RUS did not apply. The essence of his argument, both in the trial court and on appeal, is that the Club voluntarily assumed a duty of protection that it then failed to perform with due care, and that such a voluntary assumption of a duty takes this case outside the scope of the RUS. The trial court rejected Johnson's argument and this appeal followed.

*228 DISCUSSION
The provisions of LSA-R.S. 9:2791 state:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
D. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
The very similar provisions of LSA-R.S. 9:2795 state in pertinent part:
A. As used in this Section:

* * * * * *
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

* * * * * *
(5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property incurred by such person.

* * * * * *
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

* * * * * *
F. The limitation of liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
The above quoted statutes are laws on the same subject and must be interpreted in reference to each other. Keelen v. State, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). The purpose of the Louisiana RUS is set out in Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990):

*229 The stated goal of the Recreational Use Statutes is "to encourage owners of land to make land and water area available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." § 2795. If a suitable tract is properly dedicated to one or more of the specified recreational purposes, the landowner or occupier's exposure to liability to a person who enters or uses the premises for such a recreational purpose is drastically limited. In such cases, the owner owes no duty of care to keep the premises safe or to give warnings of hazards, use, structure or activity on the premises. However, there is no limitation of liability for willful or malicious failure to guard or warn against a dangerous condition, structure, use or activity, or for injury when the premises are used as a commercial recreational development or facility or used primarily for a commercial, recreational enterprise for profit. §§ 2791; 2795. 567 So.2d at 1101.
The purpose of the RUS indicates that the immunity provided to a landowner by the RUS is from ordinary negligence and not from intentional acts. Significantly, nothing in the RUS provides for any additional exceptions for particular types or particular acts of negligence.
Initially, we hold that under the facts the Club, as corporate lessee of the land, is an "owner", LSA-R.S. 9:2795(A)(2), rather than "a person using the land of another for recreational purposes", LSA-R.S. 9:2795(D). Under Subsection D, a person hunting on the land would not be relieved of liability for the negligent shooting of another hunter. However, Subsection D was not intended as an additional exception to the immunity of an "owner" for recreational use by others, as where a corporate entity leases land for recreational use by individuals.
We now turn to the issue concerning assumption of a duty of care. We acknowledge the general principle of law that a duty of protection which is voluntarily assumed must be performed with due care, as discussed in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). However, we have found no Louisiana case discussing this general principle in the context of Louisiana's RUS. The case of Cooper v. Brownlow, 491 So.2d 693 (La.App. 5 Cir.1986), cited by appellant, is not a case involving a voluntary assumption of duty. There the Jefferson Levee District was not found to be immune from liability under Louisiana's RUS when another statute, LSA-R.S. 38:1480, specifically imposed a responsibility on the Jefferson Levee Police Officers for maintaining order and exercising general police power on and off the levees within the District. Thus, the appellate court reversed a summary judgment based on the RUS where a minor was injured by a firecracker thrown into a bonfire. Plaintiff alleged that the District was negligent for granting a permit for the bonfire and for lack of crowd control, considering past experience and knowledge of the size of the crowd the bonfire would draw, the crowd's unruliness, and lack of control. We also observe that Monteville, supra, subsequently held the RUS were not intended to apply to public lands or grant immunity to subdivisions of the state.
Considering the absence of discussion of voluntary assumption of a duty in Cooper and other Louisiana cases involving the RUS, the decisions of other jurisdictions interpreting very similar statutes are instructive, especially where the enactment of recreational use statutes has been a significant development nationwide. As of 1964, only ten states had enacted recreational use statutes. By the beginning of this decade, forty-five had recreational use statutes that, although varying in some particulars, shared a great deal of similarities. Hence, the decisions of other courts construing comparable legislative provisions are helpful in studying our own statutes. Monteville, supra.
In Palmer v. U.S., 945 F.2d 1134 (9th Cir.1991), the plaintiff sustained injuries in a slip and fall accident at an army medical center swimming pool in Honolulu, Hawaii. The plaintiff was permitted to enter the facility at no charge in order to accompany his grandchildren who were allowed to use the pool because their mother worked at the medical center. The plaintiff brought suit against the United States under the Federal Tort Claims Act. Under that legislation, the *230 United States was protected from liability under the Hawaii RUS to the same extent that the RUS would shield a private party. Thus, interpretation of the state statute was necessary.
Like the Louisiana RUS, the Hawaii statute in Palmer provided that:
an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Haw. Rev.Stat. § 520-3.
Moreover, the statute's purpose, like the purpose of the Louisiana legislation, was to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.
Although the plaintiff in Palmer made several arguments against application of Hawaii's RUS to the United States, the plaintiff contended that even if the statute immunized the United States from liability, the government nonetheless was liable to the plaintiff for his injuries because the government voluntarily assumed a duty of reasonable care. Plaintiff argued that by hiring lifeguards, washing down the steps, and generally maintaining the pool area, the United States voluntarily undertook a duty of reasonable care. The Ninth Circuit Court of Appeals disagreed.
The court first disagreed with two lower court cases which ultimately relied on cases generally articulating the "voluntary undertaking" theory of liability. The Palmer court noted a recreational use statute was not applicable in any of those cases. Thus, the court was not persuaded by the two lower court decisions that the Hawaii Legislature intended an exception to be made to the RUS when a landowner gratuitously undertook to make recreational land safer. The court refused to create such an exception particularly because the result might be to discourage efforts to make recreational facilities safer.
The court in Palmer discussed with approval the Tenth Circuit's opinion in Klepper v. City of Milford, 825 F.2d 1440 (10th Cir. 1987), in which a man was injured while diving into a lake from his boat near a dock at the Milford City Park. The Kansas RUS at issue in Klepper was nearly identical to the Hawaii RUS in Palmer. The plaintiff argued that the defendants waived their immunity under the Kansas RUS when they undertook to safeguard Milford City Park users from harm by erecting a warning sign near the boat dock and making inspections of the Milford City Park. As in Palmer and the instant case, the plaintiff argued that the defendants, by accepting a duty to protect, should be held accountable for failure to do so with due care. The lower court noted that sound public policy would encourage safety inspections and warnings by owners of recreational areas. Thus, liability under the RUS for negligent undertakings could well have the effect of discouraging warnings and inspections, or, alternatively, landowners might take their land from public use rather than face the increased risk attaching to their precautionary conduct. The appellate court agreed with the district court's analysis, and observed that the RUS itself was a statutory modification of the common law of torts and provided for no liability for simple negligence. The appellate court stated that if the Kansas Legislature had wanted to provide for additional exceptions, such as liability for negligent inspections, it could have so stated, and that to rule otherwise would have the effect of defeating the purpose of the RUS.
A third case in which a court rejected a plaintiff's argument based on voluntary assumption of a duty is Weaver v. United States, 809 F.Supp. 527 (E.D.Mich., 1992). There a canoeist was severely injured while diving off a bridge into a river in a national forest in Michigan. The court was required to interpret Michigan's RUS in light of plaintiff's argument that the government, by providing a published recreation opportunity guide giving information regarding canoeing down the river, then owed a legal duty to plaintiff to warn him of the dangers of diving from the bridge. The government responded by arguing that the plaintiff's claim was actually a negligence claim and therefore was *231 barred by the state RUS. The court agreed with the general principle that once a party voluntarily assumes a duty to do something it must do so in a non-negligent manner. The court then stated that whether or not the government had a duty to provide information warning of the dangers of diving or swimming in the river, its failure to include that information could only be characterized as negligent activity. Therefore, the action should be barred by the RUS. Citing Klepper, supra, with approval, the court observed that the Michigan RUS did not restrict its application to negligence claims based on failure to take certain safety measures, nor did it exempt from its coverage claims of failure to warn. Accordingly, the plaintiff's claim of failure to warn fell squarely within the ambit of the statute and therefore was barred.
We are in agreement with the holdings and rationale of Palmer, Klepper, and Weaver, supra. Louisiana's RUS is quite similar in both its purpose and its provisions to the statutes discussed in those cases. Like the statutes in those cases, our law provides a landowner with immunity from simple negligence. We hold that such negligence, whether passive or active, falls within the scope of the RUS. As previously noted, the plaintiff's petition herein bases its allegations of liability on four listed instances of "negligent actions or inactions" of the Club. Therefore, we conclude that the trial court was correct in relying on the RUS to grant summary judgment to the defendants. To hold otherwise would encourage owners to take no steps whatsoever to make recreational facilities safer, and might encourage some landowners to withdraw their land from recreational use altogether, thereby undermining the very purpose of the legislation.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.