671 So.2d 1229 (1996)
Christopher WARD, Plaintiff-Appellee,
v.
HERMITAGE INSURANCE CO., et al, Defendants-Appellants.
No. 28236-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
*1230 Bobby L. Culpepper, for Appellants.
Weiner, Weiss, Madison & Howell by Mark L. Hornsby, Shreveport, for Appellee.
Before MARVIN, WILLIAMS and STEWART, JJ.
STEWART, Judge.
Plaintiff, Christopher Michael Ward, was accidentally shot at a hunting club in Webster Parish, Louisiana. Ward now appeals the trial court's granting of a partial summary judgment in favor of the hunting club and its insurer.
Ward complains that the hunting club was found to be entitled to statutory immunity provided by La.R.S. 9:2791 et seq., the Recreational Use law, and that the hunting club's liability insurer was also granted summary judgment. For the following reasons, we affirm.

FACTS
Ward was a member of the Union Springs Hunting Club on November 1, 1993. On that day, while present on hunting club property to put out deer corn, he was accidentally shot by Robert Earl Horn, a 16-year-old boy, hunting on the property pursuant to a visitor's pass from his grandfather, a club member.
At the time of the accident, the hunting club was insured under a liability insurance policy issued by the Hermitage Insurance Company. When Ward filed suit for his personal injuries, he brought suit not only against the father of Robert Earl Horn, but also against the hunting club and its insurer. The club and the insurer filed a motion for summary judgment, relying upon the statutory immunity provided by Louisiana's Recreational Use Statutes (RUS), LSA-R.S. 9:2791 and 9:2795. The initial motion for summary judgment was denied by the trial court before this court's opinion in Johnson v. Lloyd's of London, 26,813 (La.App.2d Cir. 4/5/95), 653 So.2d 226, writ denied, 95-1114 (La. 6/23/95), 656 So.2d 1016. There we interpreted the Recreational Use statutes and affirmed a summary judgment in favor of a hunting club and its insurer.
After Johnson became final the Hermitage and the Union Springs Hunting Club *1231 then filed a second motion for summary judgment. The trial court granted the second motion for summary judgment, and this appeal followed.

LAW OF THE CASE ISSUE
Ward's first issue concerns whether or not the second motion for summary judgment was proper after the same judge had denied the first motion for summary judgment made by the same parties on the same grounds. Ward argues that the "law of the case" principle should apply.
The "law of the case" principle is merely a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269 (La.App. 1st Cir.1982) (citing Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973)).
We conclude the trial court did not have a mere doubt as to the correctness of his previous denial of defendants' initial motion for summary judgment. The trial court granted the motion for these clearly stated reasons:
Okay, I can take a hint. I think the Second Circuit is trying to tell me something here. TheLike I said, my inclinations were the other way, but on the case that they decided the day before that they drop kicked y'all out, I think they're telling me that you're correct on this ...
The trial court was obviously referring to Johnson v. Lloyd's of London, 26,813 (La. App.2d Cir. 4/5/95), 653 So.2d 226, writ denied, 95-1114 (La. 6/23/95), 656 So.2d 1016, the opinion argued by defendants in support of their second motion for summary judgment. While the trial court did indicate its initial inclinations had been the "other way," it implicitly concluded its initial inclinations were incorrect in light of Johnson. We conclude the trial court's decision to grant defendants second motion for summary judgment was based on more than mere doubt. The law of the case doctrine is simply inapplicable in these circumstances. Louisiana National Bank v. Jumonville, 563 So.2d 965 (La.App. 1st Cir.1990).
We follow the rationale of Louisiana National Bank and conclude that the initial denial of defendants' motion for summary judgment was merely interlocutory and reviewable on appeal of a final appealable judgement.
Accordingly, this assignment of error lacks merit.

RECREATIONAL USE IMMUNITY
The pertinent provisions of LSA-R.S. 9:2791 state:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warnings of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant gives permission to another to enter the premises for such recreational purposes, he does not thereby extend any assurance that the premises are safe for such purpose or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
* * * * * *
D. The limitation on liability extended by this section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire *1232 public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
The similar provisions of LSA-R.S. 9:2795 state in pertinent part:
A. As used in this section: (1) "Land" means land, roads, water, water courses, private-ways and buildings, structures, and machinery or equipment when attached to the realty. (2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or persons in control of the premises. (3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, nature study, water siding, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites. (4) "Charge" means the admission price or fee asked in return for permission to use lands. (5) "Person" means individuals regardless of age.
B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as defined does not thereby: (a) Extend any assurance that the premises are safe for any purposes, (b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed, (c) Incur liability for any injury to person or property incurred by such person.
* * * * * *
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.
* * * * * *
F. The limitations on the liability extended by this Section to the owner, lessee, or occupant of premises shall not be affected by the granting of a lease, right of use, or right of occupancy for any recreational purpose which may limit the use of the premises to persons other than the entire public or by the posting of the premises so as to limit the use of the premises to persons other than the entire public.
In Johnson, supra, we observed that the above-quoted statutes are laws on the same subject and must be interpreted in reference to each other. We also agreed with the purpose of the statute as set out in Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097, 1101 (La.1990):
The stated goal of the Recreational Use Statutes is "to encourage owners of land to make land and water area available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." § 2795. If a suitable tract is properly dedicated to one or more of the specified recreational purposes, the land owner or occupier's exposure to liability to a person who enters or uses the premises for such a recreational purpose is drastically limited. In such cases, the owner owes no duty of care to keep the premises safe or to give warnings of hazards, use, structure or activity on the premises. However, there is no limitation of liability for willful or malicious failure to guard or warn against a dangerous condition, structure, use or activity, or for injury when the premises are used as a commercial recreational development or facility or used primarily for commercial recreational enterprise for profit. §§ 2791; 2795.
In arguing against application of the immunity provided by the RUS, Ward cites the three-part test set forth in Monteville, supra, for determining whether the statutory immunity applies, to-wit: (1) the land upon which the injury occurs is undeveloped, nonresidential, and rural or semi-rural; (2) the injury itself is the result of recreation that can be pursued in the "true outdoors"; and (3) the injury-causing instrumentality must be of the type normally encountered in the "true outdoors" and not of the type usually found in *1233 someone's backyard. Ward admits that the first part of the test is satisfied because the land at issue is undeveloped, nonresidential, rural timberland. However, Ward argues that material factual issues exist respecting the second and third parts of the test. He asserts that he was merely walking along a trail in the woods, that his action in and of itself did not result in the injury which he sustained, and that the injury resulted from actions of a third party. This argument has no merit. Ward was on the property to put out deer corn, obviously for the purpose of hunting which is specifically mentioned in both statutes as a "recreational purpose." Furthermore, Robert Earl Horn also was pursuing a statutorily recognized "recreational purpose" by hunting at the time of the accident. Both individuals were on land leased from the landowner for the use of the hunting club members and their guests.
Ward also argues that the third part of the test is "extremely difficult" to apply to the situation at hand because the "injury-causing instrumentality" was a 16-year-old boy with a shotgun. He argues that there was no "injury-causing condition or instrumentality" directly relating to the land in question so as to require the implementation of the RUS. Again, we reject Ward's argument. First of all, the "injury-causing instrumentality" was a shotgun. A shotgun certainly is an instrumentality that one would expect to encounter at a hunting club where other members and their guests are pursuing game on rural land. Additionally, the previously-quoted provisions of LSA-R.S. 9:2791(A) clearly state that an owner, lessee or occupant of premises used by others for hunting, etc. does not assume responsibility for, or incur liability for, "any injury to persons or property caused by any act of person to whom permission [to enter the premises for recreational purposes] is granted." The legislature obviously contemplated that the RUS immunity would extend to situations, like that present here, where injury to one person is caused by the act of another person to whom an "owner-lessor" has granted permission to enter the premises for recreational purposes.
We also observe that although appellant has not directly argued the point, the granting of permission to hunt to the 16-year-old hunter, without more, does not begin to approach "willful or malicious failure to warn." Louisiana no only allows, but requires, 16-year-olds to obtain licenses or pay fees to hunt and fish. LSA-R.S. 56:103.1(B)(1). There is no presumption in the law that a 16-year-old cannot hunt safely without adult supervision as Ward suggests.
Ward's final issue questions whether or not the RUS provided a proper basis for summary judgment in favor of the Hermitage. Ward emphasizes LSA-R.S. 9:2795(D) which essentially states that the statutory immunity does not relieve any person using the land of another for recreational purposes from any obligation he may have in the absence of the immunity to exercise care in his use of the land and in his activities thereon, or from the legal consequences of his failure to use such care. Ward asserts that policy endorsements amend the definition of an insured to include, as an insured, any of the club's members with respect to their liability for the activities of the club or activities they performed on behalf of the club. Ward concludes that the issuance of the visitor's pass and the allowing of the 16-year-old to hunt on the club premises falls within the scope of the liability coverage provided under the policy.
Without question, the policy at issue is a general liability policy, not an accidental injury policy. Thus, the purpose of the policy was not to provide coverage for any person accidentally injured on a premises, but to provide protection to the club and its members from liability for the club's activities or activities performed by members on the club's behalf. Logically and plainly, if neither the club nor a member is legally liable for certain activities, then liability insurance coverage does not attach. Activities which are statutorily immune under the RUS law do not afford a cause of action against the liability insurer of persons engaged in these activities.
The corollary question is whether or not providing Robert Earl Horn, with a club member's visitor's pass, arguably is an activity falling outside of the immunity provided by the RUS. We answer this question in the negative. This is not a case in which a club member accidentally shot another person on *1234 club premises. In that case, the language of the policy might present a much more interesting legal issue. However, Robert Earl Horn was not a member of the hunting club, and the club's only "activities" in question were providing Robert Earl Horn with a visitor's pass and allowing him to hunt on the club's leasehold. The giving of a visitor's pass to a 16 year old licenced hunter does not fall squarely outside the scope of the statutory immunity provided by the RUS. Accordingly, the liability insurer is not liable to plaintiff.

CONCLUSION
For the above reasons, we conclude that the trial court did not err in granting the partial summary judgment in favor of both defendants. In so holding, we are well aware that summary judgment is appropriate only when the mover shows that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B). Only when reasonable minds must inevitably concur is summary judgment warranted. Mahlum v. Baker, 25876 (La.App.2d Cir. 6/24/94), 639 So.2d 820. Summary judgment was appropriate in the instant case because the relevant facts were undisputed, leaving only legal issues that were correctly resolved by the trial court.
At appellant's cost, the judgment is affirmed.
AFFIRMED.