# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 14-500


**CHRISTY L. MOORE, ET AL.**

**VERSUS**

**RICE-LAND LUMBER CO., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2011-1080
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Billy Howard Ezell, Judges.


**AFFIRMED.**

**Daniel Elmo Broussard, Jr.**
**Broussard, Halcomb & Vizzier**
**P. O. Box 1311**
**Alexandria, LA 71309**
**(318) 487-4589**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Christy L. Moore**
    **Patrick Cane Moore**

**R. Todd Musgrave**
**Brent J. Carbo**
**Musgrave, McLachlan & Penn, L.L.C.**
**1515 Poydras, Ste 2380**
**New Orleans, LA 70112**
**(504) 799-4300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Certain Underwriters at Lloyd's London**
    **Larson & McGowin, Inc.**
    **Rice-Land Lumber Co.**
    **H&H Hunting Club**

**Alison A. Spindler Mansfield**
**Irwin, Fritchie, Urquhart & Moore, LLC**
**400 Poydras St., Suite 2700**
**New Orleans, LA 70130**
**(504) 310-2100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Rice-Land Lumber Co.**

**EZELL, Judge.**

This case involves the application of Louisiana's Recreational Use Immunity Statutes in dismissing Christy Moore's claim for damages for the death of her husband who was shot while hunting. Christy argues that, even though Defendants fall within the protective provisions of the recreational use statutes, they agreed by the terms of a hunting license agreement to add certain safety obligations and requirements so that the immunity protection provided by the statutes was not applicable. She also claims that the immunity protection was not available in this case because Defendants' actions were willful and they earned a profit from the hunting operations. The trial court disagreed and granted summary judgment dismissing all defendants from the case. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS

Rice-Land Lumber Company owned approximately 50,000 acres in Louisiana in 2010 that it used for commercial timber operations. Rice-Land also leased this land for hunting purposes. During 2010, there were approximately forty to forty-one hunting leases on the land. Larson & McGowin, Inc. managed the timber properties of Rice-Land, including the hunting leases. H&H Hunting Club (H&H) leased 1,523 acres from Rice-Land. Patrick Kyle Moore, the decedent, was a member of H&H.

On the morning of December 4, 2010, Patrick brought his father to H&H as a guest to hunt with him. Patrick's father hunted in a box stand which was at the intersection of two fire lanes and a logging road. According to the Louisiana Department of Wildlife and Fisheries report, Patrick left his stand to go meet with his father. As he walked toward the blind on the road, he carried a folding bag

chair over his shoulder, with the legs in the air, and his rifle over the other shoulder. At the time, he was wearing a hunter orange hat and a hunter orange vest, but due to the lack of light, the hunter orange was not visible. Thinking he was a buck, Patrick's father shot him, fatally wounding him.

Christy filed suit for wrongful death on both her behalf and her minor son's behalf against Rice-Land, Larson, H&H, and their insurer. Defendants filed a motion for summary judgment claiming statutory immunity under Louisiana's Recreational Use Immunity Statutes. A hearing on the motion was held on January 27, 2014. Agreeing with Defendants, the trial court granted their motion for summary judgment and entered judgment in their favor. Christy then filed the present appeal.

## SUMMARY JUDGMENT

On appeal, Christy contends that the granting of the motion for summary judgment in favor of Defendants was in error because there is a question of fact as to whether they are entitled to the immunity granted by the recreational use statutes. Christy does not deny that Defendants would qualify for immunity under the recreational use statutes. Christy makes three different arguments as to why summary judgment was inappropriate arguing that there are questions of fact as to whether Defendants are entitled to the protection of the recreational use statutes. She first argues that immunity protection afforded by the recreational use statutes does not apply because Defendants assumed a duty by adding additional safety obligations and requirements in the lease. H&H also included these safety obligations in its club hunting rules. Secondly, Christy claims that H&H knowingly allowed its members to violate these rules and Rice-Land knew about

2

the violations. Lastly, Christy claims that Rice-Land and/or Larson used the leased premises as a commercial recreational venture.

Louisiana Code of Civil Procedure Article 966, which governs summary judgment proceedings, was significantly amended in both the 2012 and 2013 legislative sessions. These amendments affect the burden of proof elements of the Article. At the time of this hearing, August 8, 2013, the 2013 version of Article 966 was in effect. After the amendment by 2013 La. Acts No. 391, § 1, Article 966(F)(1)(emphasis supplied) now provides that "A summary judgment *may* be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." Furthermore, Article 966(B)(2) now provides that evidence considered by the trial court must be "admitted for purposes of the motion for summary judgment." Article 966(F)(2) now provides that "[e]vidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection." Furthermore, "[o]nly evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion." La.Code Civ.P. art. 966(F)(2).

The amendments did not change the burden of proof applicable to a motion for summary judgment as set forth in Article 966(C)(2):

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his

evidentiary burden of proof at trial, there is no genuine issue of material fact.

"The Recreational Use Statutes were enacted to induce private owners of large acreages to open expanses of undeveloped lands for public outdoor, open land recreational purposes." *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So.2d 1097, 1098 (La.1990). "Louisiana Revised Statutes 9:2791 and 9:2795 address landowners' liability for property that is used for recreational purposes. These statutes address the same subject matter and are to be read together." *Hayes v. Burlington Res. Oil & Gas Co.*, 09-1353, p. 3 (La.App. 3 Cir. 4/7/10), 34 So.3d 1009, 1012.

Louisiana Revised Statutes 9:2795 provides "a limitation of liability for landowners, including the state and its political subdivisions, of property used for recreational purposes." *Souza v. St. Tammany Parish*, 11–2198, p. 4 (La.App. 1 Cir. 6/8/12), 93 So.3d 745, 747. However, the statute retains liability for (1) willful or malicious failure to warn against a dangerous condition, use, structure, or activity; (2) playground equipment or stands which are defective; and (3) intentional or grossly negligent acts by an employee of the public entity. La.R.S. 9:2795(B)(1), (E)(c), and (E)(d). We are also mindful that the recreational use statutes "are in derogation of [a] common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning." *Richard v. Hall*, 03-1488, p. 22 (La. 4/23/04), 874 So.2d 131, 148.

**Assumption of Duty**

The "**HUNTING LICENSE AGREEMENT**" entered into on July 1, 2010, on behalf of Rice-Land by Larson with H&H provides that "[t]here shall be no hunting or shooting within 200 yards of any roads or occupied building."

4

Furthermore, the "H&H Hunt Club Rules" provide that "[m]embers must abide by all rules and regulations listed on Hunt Club lease contract." Christy argues Defendants undertook a specific duty to ensure no hunting occurred near a road when they specifically included these provisions in the lease and rules. She claims that the recreational use statutes do not provide immunity when a party specifically assumes a duty. Christy claims that there was a clear violation of this duty by allowing the road in the instant case to be used as a shooting lane for a box stand.

In support of her position, Christy cites La.R.S. 9:2795(D) which provides:

> Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Section to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

In *Johnson v. Lloyd's of London*, 26,813 (La.App. 2 Cir. 4/5/95), 653 So.2d 226, *writ denied*, 95–1114 (La. 6/23/95), 656 So.2d 1016, the plaintiff filed suit against a hunting club for injuries he sustained when he fell from his own deer stand. Like the present case, the plaintiff alleged that the club voluntarily assumed a duty of protection that it then failed to perform with due care, and that such a voluntary assumption of a duty takes the case out of the scope of the recreational use statutes.

In this case the three Defendants are the party with the fee interest, the manager who controlled the land, and the lessee of the land. All three parties are "owners" of the land pursuant to La.R.S. 9:2795(A)[1] as opposed to "any person using the land of another" pursuant to Subsection (D). In addressing the application of La.R.S. 9:2795(D), the court in *Johnson*, 653 So.2d at 229, observed

---

[1] "Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." La.R.S. 9:2795(A)(2).

5

that "Subsection D was not intended as an additional exception to the immunity of an 'owner.'" The court further observed that the purpose of the Subsection was recognition that a third party may still be held liable for their own negligence. *Id.* For example, "a person hunting on the land would not be relieved of liability for the negligent shooting of another hunter." *Id*.

In further discussing whether an "owner" could assume a duty bringing it outside the protection of the recreational use statutes, the second circuit reviewed three decisions from other jurisdictions which interpreted very similar statutes: *Palmer v. U.S.*, 945 F.2d 1134 (9th Cir. 1991); *Klepper v. City of Milford*, 825 F.2d 1440 (10th Cir. 1987); and *Weaver v. United States*, 809 F.Supp. 527 (E.D. Mich. 1992). Agreeing with the holdings and rationales in those cases, the court in *Johnson* concluded that Louisiana's Recreational Use Statutes are very similar in both their purpose and their provisions and that our law provides a landowner with immunity from simple negligence although immunity from grossly negligent acts is not available. In reaching this conclusion, the court explained that "[t]o hold otherwise would encourage owners to take no steps whatsoever to make recreational facilities safer, and might encourage some landowners to withdraw their land from recreational use altogether, thereby undermining the very purpose of the legislation." *Johnson*, 653 So.2d at 231.

We agree with the reasoning expressed by the second circuit. While the landowner and the hunting club had certain rules in place for the protection of the hunters, we cannot say that they are not afforded protection under the recreational use statutes. Furthermore, as discussed in the next section, the parties to the lease understood that hunting near a boundary road was forbidden as opposed to an internal road within the lease, which is where this accident took place.

**Willing Violation**

Christy also claims that summary judgment was inappropriate because the hunting club officers knowingly placed the box stand facing the road in violation of its own rules, which she argues was a contributing factor in the death of the decedent. She also claims that the hunting club should have provided a copy of the lease to each of its members.

Pursuant to La.R.S. 9:2791(B), immunity is not available "for deliberate and willful or malicious injury to persons or property." Louisiana Revised Statutes 9:2795(B)(1) also provides that immunity is not available "for willful or malicious failure to warn against a dangerous condition, use, structure, or activity."

A willful or malicious action is a conscious course of action which is knowingly taken or not taken, which would likely cause injury, with conscious indifference to the consequences thereof. *DeLafosse v. Village of Pine Prairie*, 08-693 (La.App. 3 Cir. 12/10/08), 998 So.2d 1248, *writ denied*, 09-74 (La. 2/4/09), 999 So.2d 766.

Kurt Krueger, district manager for Larson, testified that Larson's largest part of its responsibility was to prepare and sell timber from Rice-Land's land. He did agree that it was Larson's responsibility to ensure that the lessees were not violating the lease. He also agreed that the stand was within 200 yards of a logging road, which he did not consider to be a boundary road. Kurt explained that hunting stands on boundary roads was not acceptable because there is no communication between the different hunting clubs.

Kurt supervised Brandon White who did most of the field work for Larson in December 2010. Mr. White testified that the placement of this stand on a logging road did not violate the terms of the lease. He explained that a stand was not

7

allowed near a boundary road between two leases because the people from two different leases did not communicate with one another.

Mark Hawes, who started H&H, explained that he gets to decide where stands are placed. This particular stand was his private stand, which had been at this location of two fire lanes and a logging road for two years. The logging road was intended as a shooting lane for the stand. Mark explained that he had built some nice stands like this particular stand because it was more comfortable for older hunters, women, and children. Either Mark or his son Jason gave Patrick permission for his dad to use this stand.

Mark also explained that he did not consider the placement of this stand to be in violation of the lease because the prohibition against stands within 200 yards of roads meant the main roads, or boundary roads with other leases. He explained that boundary roads on H&H's lease were the north road and east road because the rest of the lease is bounded by creeks.

Jason confirmed his father's testimony that there was no prohibition of placing stands near logging roads to be used as shooting lanes. He agreed that stands could not be placed near roads that divided H&H's lease from other leases.

While Mark testified that he originally gave a copy of the lease to all members, he stopped this practice. He does give a copy of H&H's rules to each member with a map of the lease. Visitors do not get a copy of the rules because it is up to the members to give their guests a copy of the rules. Jason also explained that every year he sits down and goes over the rules with the members. They also talk about items that are in the lease and not included in the rules.

There is absolutely no evidence that anyone desired or thought that there was a risk that someone might get shot on this logging road. Furthermore, we do

not find that there was any conscious course of action by anyone which resulted in this tragic accident. It was simply that, a tragic accident.

## Commercial Enterprise

Christy's final argument is that there is a question of fact as to whether a profit was made by leasing the lands to hunting clubs. In support of her argument, Christy points to Kurt's testimony that Rice-Land had 49,700 acres that it leased for hunting in Louisiana in December 2010 at a cost of $3.60 an acre for a total of $178,920.00.

Louisiana Revised Statutes 9:2791(B) provides that immunity is not available "when the premises are used principally for a commercial, recreational enterprise for profit." Louisiana Revised Statutes 9:2795(B)(1) also provides that immunity is not available for "an owner of commercial recreational developments or facilities." These provisions have been interpreted by the Louisiana Supreme Court to mean that "it is the 'owner's' use of the premises and not the underlying classification of the premises as a commercial recreational enterprise for profit that determines the availability of the immunity provisions to a qualified owner." *Richard*, 874 So.2d at 152.

In explaining the nature of the hunting leases, Kurt testified that it was not a commercial venture for Rice-Land. He further explained that the hunting leases were not a huge moneymaker and were only a very small portion of the income for the property which was an effort to offset property taxes. Rice-Land made its profit from timber sales on the property. Timber operations provided anywhere from $3,000.00 to $5,000.00 an acre.

H&H also did not operate as a commercial hunting club for profit. Mark Hawes testified that the amount of dues was set by the lease payment. As Jason

9

Hawes explained, they were not in it to make money and the dues just covered expenses.

In *Dear v. Crosby Chemicals, Inc.*, 95-1309 (La.App. 3 Cir. 3/6/96), 670 So.2d 775, *writ denied*, 96-1267 (La. 6/21/96), 675 So.2d 1091, this court recognized that land used primarily to grow timber for profit and also leased to a hunting club was not used for a commercial recreational enterprise for profit. We also find in this case that the evidence clearly establishes that neither Rice-Land nor H&H used this land principally as a commercial, recreational enterprise for profit. Therefore, this exception to the immunity protection of the recreational use statutes does not apply.

For these reasons, we find the trial court was correct in granting summary judgment in favor of Defendants. Costs of this appeal are assessed to Christy Moore.

**AFFIRMED.**